

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 5 2020

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ROBERT W. McGAUGH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:20-CV-323-A |
| | § | |
| FNU GRIFFIN, ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the motion of defendants, Kelson
Aguero, Jake Bolin, Vicky Fanning, James Dunbar, Vanessa
Griffin, David Southerland, Monty Benjamin "Ben" Moore, James
Robinson, Jeffery Wright, Dylan Rodriguez, Matt Coates, Danny
Clayton, Joshua Harris, Cody Powers, Trey Yocham, Nicholas
Graham, Shaelynn Kellogg, Carolyn Stripling, Taylor Williams,
and Roger Goldberg, for summary judgment.[1] The court, having
considered the motion, the response[2] of plaintiff, Robert W.
McGaugh, (including the additional disclosure filed December 2,
2020), the record, and applicable authorities, finds that the
motion should be granted.

---

[1] Defendants have never identified themselves in any filing. They simply refer to "defendants." The persons listed
are the defendants the court allowed to be served in this action. Erath County is not one of them as the court did not
interpret plaintiff's amended complaint to state a claim against it. Plaintiff has never objected to the failure of the
court to require that Erath County be served.

[2] The court notes that plaintiff has not submitted any summary judgment evidence in support of his response, unless
the unauthenticated Hood County documents attached to the response are considered. He says instead that
defendants have "provided all relevant proof necessary to show constitutional violations enacted on the plaintiff."
Doc. 60 at 21.

I.

## Plaintiff's Claims

The operative pleading is the amended complaint filed June 24, 2020. Doc.[3] 26. In it, plaintiff asserts a number of claims that can be categorized as follows: (1) destruction or confiscation of property, that is, items purchased from the commissary; (2) requiring plaintiff to wear a uniform to receive food service; (3) being disciplined for rules violations; (4) being subjected to excessive force; and (5) denying requests for medical attention.

II.

## Grounds of the Motion

Defendants interpret plaintiff's amended complaint to assert claims based on violations of the First, Fourth, and Fourteenth Amendments. They seek judgment on each claim and also allege that they are entitled to qualified immunity. Erath County maintains that plaintiff cannot establish any cause of action against it.

---

[3] The "Doc. __" reference is to the number of the item on the docket in this action.

## III.

## Applicable Legal Principles

A.   Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of

3

materials in the record . . . .").[4] If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). He cannot defeat a motion for summary judgment by submitting an affidavit that contradicts, without explanation, his earlier sworn deposition. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); Albertson, 749 F.2d at 228. Nor can he rely on conclusory allegations unsupported by concrete and particular facts. Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 312 (5th Cir. 1995).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 247-48.

---

[4] It is not the court's job to sift the record in search of evidence to support a party's opposition to a motion for summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

B.   Entity and Supervisor Liability Under § 1983

The law is clearly established that the doctrine of respondeat superior does not apply to § 1983 actions. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). The misconduct of a subordinate must be affirmatively linked to the action or inaction of the supervisor. Southard v. Tex. Bd. Of Crim. Justice, 114 F.3d 539, 554 (5th Cir. 1997). A supervisor may be liable under § 1983 only if he or she, by action or inaction, demonstrates deliberate indifference to a plaintiff's constitutionally protected rights. Id. at 551. The deliberate indifference standard allows the court to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversights. Id. (quotations and citations omitted).

Liability may be imposed against a local government only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such

5

deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a governmental policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivations. Id. at 824.) Thus, to establish governmental liability requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

6

The Fifth Circuit has been explicit in its definition of "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the [entity's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [entity] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [entity] policy. Actual or constructive knowledge of such custom must be attributable to the governing body . . . or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of [an entity] do not render the [entity] liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984)(per curiam).

Culpability for deprivation of rights is at its most tenuous where a claim turns on failure to train or supervise. Connick, 563 U.S. at 61. The failure to train or supervise must constitute deliberate indifference to the rights of persons with whom the untrained or unsupervised employees come into contact. And, to establish deliberate indifference for failure to train or supervise ordinarily requires the plaintiff to show a pattern

7

of similar constitutional violations sufficient to give notice
that the course of training or supervision is deficient in a
particular respect. Id. at 62; Bowen v. Watkins, 669 F.2d 979,
988 (5th Cir. 1982) ("Usually, a failure to supervise gives rise
to section 1983 liability only in those situations in which
there is a history of widespread abuse.").

   Neither a supervisory official nor a governmental entity
can be held liable for failing to adopt policies to prevent
constitutional violations. See, e.g., Vela v. White, 703 F.2d
147, 153 (5th Cir. 1983); Reimer v. Smith, 663 F.2d 1316, 1323
(5th Cir. 1981); Wanger v. Bonner, 621 F.2d 675, 680 (5th Cir.
1980).

C.   Qualified Immunity

   Qualified immunity insulates a government official from
civil damages liability when the official's actions do not
"violate clearly established statutory or constitutional rights
of which a reasonable person would have known." Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly
established," that right's contours must be "sufficiently clear
that a reasonable official would understand that what he is
doing violates that right." Anderson v. Creighton, 483 U.S. 635,
640 (1987). Individual liability thus turns on the objective
legal reasonableness of the defendant's actions assessed in

8

light of clearly established law at the time. <u>Hunter v. Bryant</u>,
502 U.S. 224, 228 (1991); <u>Anderson</u>, 483 U.S. at 639-40. In
<u>Harlow</u>, the court explained that a key question is "whether that
law was clearly established at the time an action occurred,"
because "[i]f the law at that time was not clearly established,
an official could not reasonably be expected to anticipate
subsequent legal developments, nor could he fairly be said to
'know' that the law forbade conduct not previously identified as
unlawful." 457 U.S. at 818. In assessing whether the law was
clearly established at the time, the court is to consider all
relevant legal authority, whether cited by the parties or not.
<u>Elder v. Holloway</u>, 510 U.S. 510, 512 (1994). If public officials
of reasonable competence could differ on the lawfulness of
defendant's actions, the defendant is entitled to qualified
immunity. <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015); <u>Malley v.
Briggs</u>, 475 U.S. 335, 341 (1986); <u>Fraire v. City of Arlington</u>,
957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to
qualified immunity, the court considers whether the plaintiff
has alleged any violation of a clearly established right, and if
so, whether the individual defendant's conduct was objectively
reasonable. <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991); <u>Duckett
v. City of Cedar Park</u>, 950 F.2d 272, 276-80 (5th Cir. 1992). In

so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. Cass v. City of Abilene, 814 F.3d 721, 730-31 (5th Cir. 2016); Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007); Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better

does not affect his entitlement to qualified immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villareal, 628 F.3d 209, 211-12 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. White v. Pauly, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v. McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

D.   Rights of Pretrial Detainees

The constitutional rights of a pretrial detainee flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. Garza v. City of Donna, 922 F.3d 626, 632

(5th Cir. 2019). Under the due process clause, a detainee may not be punished prior to an adjudication of guilt. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Punishment includes deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Thompson v. Upshur Cnty., 245 F.3d 447, 457 (5th Cir. 2001). It also includes the use of excessive force that amounts to punishment. Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that an individual defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). That is, the employee "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. Id. at 838. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459. Rather, the plaintiff must show that the defendant acted with subjective deliberate indifference. Hare v. City of Corinth, 74 F.3d 633,

12

648-49 (5th Cir. 1996)(en banc)(discussing Farmer). Deliberate

indifference is an extremely high standard to meet. Domino v.

Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001).

As for a pretrial detainee's excessive force claim, the

Supreme Court has determined that an objective standard applies.

Kingsley, 576 U.S. at 397. That is, the pretrial detainee need

only show that the force purposely or knowingly used against him

was objectively unreasonable. Id. The court makes this

determination from the perspective of a reasonable officer on

the scene, including what the officer knew at the time, not in

hindsight. Id. Further, the court must defer to policies and

practices that in the judgment of jail officials are needed to

preserve order and discipline and maintain institutional

security. Id. Factors that may bear on the reasonableness of the

force used include

> the relationship between the need for the use of force
> and the amount of force used; the extent of the
> plaintiff's injury; any effort made by the officer to
> temper or to limit the amount of force; the severity
> of the security problem at issue; the threat
> reasonably perceived by the officer; and whether the
> plaintiff was actively resisting.

Id.

A pretrial detainee's claims against a governmental entity

are characterized as "conditions of confinement" or "episodic

act or omission" claims. Garza, 922 F.3d at 632. In a conditions

13

of confinement claim, the plaintiff attacks the general

condition, practices, rules or restrictions of pretrial

confinement. Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997). To

succeed on such a claim, the plaintiff must prove: (1) a rule or

restriction, an intended condition or practice, or a de facto

policy as evidenced by sufficiently extended or pervasive acts

of jail officials, (2) not reasonably related to a legitimate

governmental objective, i.e., arbitrary or purposeless, (3) that

caused a violation of his constitutional rights. Duvall v.

Dallas Cnty., 631 F.3d 203, 207 (5th Cir. 2011). In considering

whether a regulation affecting a constitutional right withstands

challenge, the court considers (1) whether the regulation has a

valid, rational connection to a legitimate governmental

interest; (2) whether alternative means are open to inmates to

exercise the asserted right; (3) what impact an accommodation of

the right would have on guards and inmates and prison resources;

and (4) whether there are ready alternatives to the regulation.

Von Minden v. Jankowski, 268 F. App'x 352, 353-54 (5th Cir.

2008)(citing Turner v. Safley, 482 U.S. 78, 89-91 (1987)).

> Restraints that are reasonably related to the
> institution's interest in maintaining jail security do
> not, without more, constitute unconstitutional
> punishment, even if they are discomforting and are
> restrictions that the detainee would not have
> experienced had he been released while awaiting trial.

Bell v. Wolfish, 441 U.S. 520, 540 (1979). Jail administrators, and not the courts, are to make the difficult judgments concerning institutional operations. Turner, 482 U.S. at 89.

To establish governmental liability in an episodic act or omission case, the plaintiff must show that (1) a governmental employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference, and (2) this violation resulted from a governmental policy or custom adopted and maintained with objective deliberate indifference. Garza, 922 F.3d at 634. Objective deliberate indifference means that liability may be premised on obviousness or constructive notice. Scott, 114 F.3d at 54.

IV.

Analysis

At all times pertinent to this lawsuit, plaintiff was a pretrial detainee at the Erath County jail. Although he refers in his amended complaint to certain policies, it appeared to the court in conducting its initial review that he was really complaining about selective enforcement and not the policies themselves. For example, although he refers to the policy requiring the wearing of jail uniforms during certain hours, he claims that he was harassed about wearing a uniform when other similarly situated detainees were served food without wearing a

15

uniform. Doc. 26 at 3, ¶ c). In the first paragraph of the
amended complaint, he says that no other detainee has been
subjected to the same punishments. Id. at 1, ¶ 1. Accordingly,
the court did not direct the clerk to issue summons for Erath
County.

In studying the amended complaint again with regard to the
motion for summary judgment, the court notes that there are
possibly two conditions of confinement claims. First, plaintiff
refers to the "Turner test" and says that the policy requiring
wearing of uniforms during food service and between specific
hours is unconstitutional. Id. at 4, ¶ f). And, he asserts that
the policy requiring inmates to refer to jailers as officers is
unconstitutional. Id. at 6, ¶ e). Despite not having been
served, Erath County has joined in the motion for summary
judgment, arguing that plaintiff cannot establish that it was
deliberately indifferent to his constitutional rights through
any of its policies. Doc. 54 at 40-43.

Erath County jail policy requires that inmates wear jail
clothing between the hours of 6 a.m. and 9 p.m. Inmates are
required to be dressed at meals. Doc. 55 at 2. The reasons for
the policy are set forth at length in the affidavit of the jail
administrator, Vanessa Griffin, id. at 189-91, and fully
discussed in defendants' brief. Doc. 54 at 12-17. Plaintiff

admits that he violated the policy, but argues that since he was
often in a solitary cell it should make no difference that he
was not properly dressed. Doc. 60 at 41-42. Plaintiff has not
shown that the policy itself violated his constitutional rights
in any respect.[5] Nor has he shown that the policy was selectively
enforced against him.[6] Although he alleges that he would have
missed several meals without the ability to purchase food from
the commissary, Doc. 60 at 40, he admitted in a phone call to
his mother that he is served food. Doc. 55, tab 2, call 8. There
is no evidence that plaintiff was denied reasonably adequate
food. See Cooper v. Sheriff, Lubbock Cnty., 929 F.2d 1078, 1082-
83 (5th Cir. 1991)(a policy requiring denial of food for failure
to dress might constitute a violation of constitutional rights).

Plaintiff also complains about a policy that requires
inmates to refer to jailers as "officers." Doc. 26 at 6, ¶ e).
The summary judgment evidence establishes that there is no such
policy and that plaintiff has not been disciplined for failing
to refer to any jailer as "officer." Doc. 55 at 191. Rather,
inmates are required to speak respectfully to one another and to
jailers. Id.; Doc. 54 at 17-18. Plaintiff does not deny that he

---

[5] In particular, he has not shown that the policy violated a sincerely held religious belief. (Videos belie any
contention that plaintiff considers mealtime sacramental. Doc. 26 at 3, ¶ d); Doc. 55, tab 3, videos 7 & 8). Nor has
he shown that any individual defendant discriminated against him because of his religion. In fact, there is no
evidence that any defendant knew that plaintiff contended that his right to freedom of religion was being violated.
[6] His summary judgment response admits that detainees were treated similarly. Doc. 60 at 16.

is deliberately disrespectful. He argues that he should be allowed to say whatever he wants as long as it does not present a clear and present danger to jailers. See, e.g., Doc. 60 at 26. He has not shown that the policy, such as it is, is not reasonably related to the efficient running of the jail. Duvall, 631 F.3d at 207.

Plaintiff complains that he was subjected to searches and confiscation or destruction of his property on several occasions. Doc. 26 at 1-2. Plaintiff has not submitted any summary judgment evidence to support such claim, even assuming it was a valid one. See Bell, 441 U.S. at 557 (room searches are an appropriate security measure). Defendants have shown that jailers confiscated items such as food containers with bits of food and other matter that would constitute a health hazard or attract vermin. Doc. 55 at 62-63, 191-92. Confiscation of contraband from pretrial detainees does not amount to a constitutional violation.[7] Washington v. Tinsley, 809 F. Supp. 504, 508 (S.D. Tex. 1992) In any event, plaintiff's allegation that his property was confiscated does not state a claim under § 1983. Stauffer v. Gearhart, 741 F.3d 574, 583 (5th Cir. 2014)(citing Hudson v. Palmer, 468 U.S. 517 (1984)). Plaintiff's

---

[7] Contraband is clearly defined in Erath County policy as any items not specifically authorized to be in an inmate's possession. Doc. 55 at 2, 150. Contraband includes items altered from their original state or purpose. Id. at 2. Personal items authorized are also described in the policy. Id. at 3.

remedy, if any, is in state court. Id. (citing Thompson v. Steele, 709 F.2d 381, 383 (5th Cir. 1983)).

Plaintiff complains about disciplinary hearings,[8] alleging that all but one arose out of his refusal to wear his jail uniform. Doc. 26 at 4. He acknowledges that in each instance he received a notice of disciplinary hearing. Id. He then refers to his right "to speak foolishly and without moderation," and asserts in a conclusory manner that all disciplinary actions have denied him his right to due process. Id. at 6. He says his guilt was predetermined and that he was denied the right to confront his accusers. Id. at 6-7. He offers no proof to support any of these allegations. Defendants have shown that in each instance but one plaintiff received a hearing at which he was allowed to present evidence. On that occasion, movant created a disturbance en route to the hearing and it was cancelled. Doc. 55 at 189. Sanctions imposed in each instance were minimal. Id. There is no evidence to support the contention that movant's due process rights were violated.[9]

Plaintiff next addresses alleged excessive force used against him. Doc. 26 at 7-9. He describes incidents on March 13,

---

[8] To the extent plaintiff may be contending that the grievance system is inadequate, such a claim does not allege a constitutional violation. Waller v. Ward, No. 3:16-CV-1168, 2016 WL 7235832, at *4 (W.D. La. Oct. 19, 2016).
[9] The court notes that the Fifth Circuit has indicated that the Wolff v. McDonnell, 418 U.S. 539 (1974), standard may apply when pretrial detainees are placed in solitary confinement in a county jail. Walker v. Navarro Cnty. Jail, 4 F.3d 410, 412 (5th Cir. 1993). The test was met in this case.

2020, id. at 7-9, and on June 3 and 6, 2020. Id. 10-11. Again, he has not come forward with any evidence to support his allegations. The record reflects that plaintiff has done everything he can to get jailers to attack him. Doc. 55, tab 2, call 5. Videos belie the allegations of use of excessive force against him. Id., tab 3. In fact, the videos show that officers were remarkably patient with plaintiff given that he was constantly yammering at them, at times becoming red in the face, and became combative when they tried to restrain him. That plaintiff would scream and yell while on the phone with his mother, causing her to tell him to calm down and on another occasion remarking that he had been crazy the night before, demonstrates the kind of chaos plaintiff created at the jail. Id., tab 2, calls 1 and 8. Keeping him away from other inmates was certainly within the realm of reasonable jail administration.

Plaintiff also contends that defendants were deliberately indifferent to his serious medical needs. Doc. 26 at 9-10. The record does not support the allegations. In fact, plaintiff's response merely alludes to "major medical issues," Doc. 60 at 17, "serious medical conditions," id. at 18, and "needing severe medical assistance," id. at 37, but does not provide any specific description of a particular serious medical need that

20

was not addressed, much less any evidence to support such claim.
He attaches to his summary judgment response documents
pertaining to requests for services made while plaintiff was
incarcerated at the Hood County Jail from August through October
2020. These documents, even if proper summary judgment evidence,
do not establish a claim for deliberate indifference to
plaintiff's serious medical needs. Rather, the record reflects
that plaintiff was provided medical care. See, e.g., Doc. 55 at
54-56, 69.

Plaintiff addresses an alleged claim of conspiracy, Doc. 60
at 30-32, although the court does not find such a claim raised
in the amended complaint. See Doc. 26 at 12 (mentioning
conspiracy only in a conclusory way). Plaintiff has not come
forward with any evidence to support the claim, even had it been
properly alleged.

The individual defendants maintain that they are entitled
to qualified immunity. The court agrees. Plaintiff has not
raised a genuine issue of material fact in this regard.
Plaintiff hardly mentions any of the individual defendants. See
Cass, 814 F.3d at 730-31. He certainly has not established that
any of them violated his constitutional rights and acted in an
objectively unreasonable manner. Siegert, 500 U.S. at 231.

As other courts have noted, the judiciary is ill-equipped

21

to micro-manage a jail's day-to-day operations. Turner, 482 U.S. at 89; Bell, 441 U.S. at 547-48. Federal courts are loath to intervene when detainees complain of mere inconveniences. Bell, 441 U.S. at 539 n.21; Ruiz v. El Paso Processing Center, 299 F. App'x 369, 371 (5th Cir. 2008). Here, plaintiff has not shown that his numerous complaints rise above de minimis matters with which the court should concern itself.[10] He has not been punished in violation of the constitution.

V.

Order

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against defendants (including Erath County); and that plaintiff's claims against defendants (including Erath County) be, and are hereby, dismissed with prejudice.

SIGNED December 5th, 2020.

JOHN McBRYDE
United States District Judge

---

[10] The court declines to accept plaintiff's repeated suggestion that it obtain and review every video made of his incarceration.